UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL DENTON, RANDI L. KREMIAN ) <br> and DORIS MARIE GRANAT-MONTEIL ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NORTHEAST ILLINOIS REGIONAL ) <br> COMMUTER RAILROAD CORPORATION ) <br> Defendant. ) | Cause No. 02 C 2220 <br><br> Magistrate Judge <br> Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

On November 5, 2004, at the defendant's request, the court entered a rule to show cause directing plaintiff Doris Marie Granat-Monteil ("Monteil") to show cause why her complaint should not be dismissed with prejudice. [Dkt 35.] For the reasons set out below, Monteil's complaint is not dismissed at this time; instead, the expert report submitted by Dr. Gray on behalf of Monteil is stricken, and Dr. Gray is barred from testifying as a witness in this case.

### BACKGROUND

This is an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. ("FELA"). Monteil and co-plaintiffs Denton and Kremian allege that in 2000, they were employees working in the corporate offices of defendant Northeast Illinois Regional Commuter Railroad Corporation (commonly called "METRA") when the 15th floor of the building became contaminated with molds, fungi and bacteria. (Compl. ¶ 8, 10.) [Dkt 1.] The plaintiffs each allege that they became ill as a result of being exposed to unsafe work conditions. (Id. ¶ 11.) In February 2003, the parties consented to the

1

jurisdiction of a Magistrate Judge and the case was reassigned to this court. [Dkt 8, 9, 10.] The present issue relates to the disclosure of expert witnesses.

In August 2003, fact discovery except for the depositions of treating professionals was ordered to be concluded by December 19, 2003, and the plaintiffs were ordered to serve disclosures pursuant to Rule 26(a)(2), including written reports, by January 23, 2004. (Order, Aug. 25, 2003.) [Dkt 17.] Subsequently, that discovery schedule was extended several times. In December 2003, fact discovery was extended to January 23, 2004, and the plaintiffs' Rule 26(a)(2) disclosures were extended to February 23, 2004. (Order, Dec. 19, 2003.) [Dkt 18.] In January 2004, the defendant was ordered to produce additional information, and the expert discovery schedule was stricken. (Order, Jan. 27, 2004.) [Dkt 19.] In March 2004, the plaintiffs were ordered to serve Rule 26(a)(2) disclosures by May 4, 2004, "FINAL DEADLINE." (Order, March 9, 2004.) [Dkt 21.] The plaintiffs moved for leave to file an amended complaint. [Dkt 20.] After briefing, that motion was denied [dkt 24], but the plaintiffs' motion to extend time to serve their Rule 26(a)(2) disclosures was granted to June 4, 2004. [Dkt 26.] According to METRA, on June 4, 2004, the plaintiffs served on METRA's counsel "Plaintiffs' Rule 26 Expert Disclosures" identifying a building expert (Kim Anderson, who is not at issue here) and Robert Tiballi, D.O., as expert witnesses for all three plaintiffs. (Def. METRA's Reply to Court's Rule to Show Cause and Mot. for Sanctions ("METRA's Reply") ¶ 6.) [Dkt 46.]

On June 15, 2004, a status hearing was held. The plaintiffs' counsel made an oral motion to extend the time for serving Rule 26(a)(2) reports, stating:

> I provided [METRA's counsel] the name of Dr. Tiballi, who had examined two of the clients and looked over the materials. His report has not come in. . . .
>     He has not gotten around to giving me the reports. I told him that we need the reports. . . . And he said he would get it within a week or two. That's not the problem.
>
> *My third client, Marie Monteil, her flight from Arizona was cancelled. She never*

*got in to see him.* She is going to see another doctor out in Benson, Arizona, Dr. Gray, Michael Gray, scheduled for later this month. I don't know when I'm going to get a report from him. I have a call in to him. I don't know how quick he can return a report and what have you, so I need time.

* * * * *

THE COURT: [W]hy is it Ms. Monteil didn't get to see Dr. Tiballi?

PLAINTIFFS' COUNSEL: Her flight was cancelled, and he is not seeing anybody else because of the fact of the turmoil in his practice. I couldn't even get her in, you know, in and out.

(METRA's Reply, Ex.1, Tr. June 15, 2004 at 2-3, 4 (emphasis added).) Over the defendant's objection, the court extended the time for the plaintiffs to submit expert reports for Dr. Tibbali to July 1, 2004 and for Dr. Gray until July 23, 2004. (*Id.* at 8-9.) The court noted, "I'm really reluctant to do this. I'm going to do this because I don't think there's bad faith on the part of the plaintiff . . . ." (*Id.* at 8.) The plaintiffs' counsel acknowledged that no treating doctors would be called to testify. (*Id.* at 7.)[1] Subsequently, the plaintiffs' counsel served an expert report from Dr. Tiballi for plaintiffs Denton and Kremian, and, on July 23, 2004, the plaintiffs' counsel served an expert report from Dr. Michael Gray for plaintiff Monteil. (Pls.' Mot. Separate Trials and Mot. Withdraw ¶ 3 [dkt 32]; Pls.' Mot. Leave Serve Suppl. Expert Report, Ex. A., Expert Report of Dr. Michael R. Gray [dkt 30].)

At a hearing on October 1, 2004, METRA's counsel reported that Dr. Tiballi had testified at his deposition that he had examined Monteil in May 2004, contrary to the statements at the June 15, 2004 hearing. METRA's counsel asked for sanctions against Monteil. An order was entered requiring Dr. Tiballi to provide the plaintiffs' counsel with his file regarding Monteil, for delivery to METRA's counsel. (Order, Oct. 1, 2004.) [Dkt 29.] Subsequently, John Bishof, the attorney who had been

---

[1] The parties had been reminded of the Seventh Circuit's opinion in *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004), requiring that treating professionals who will testify pursuant to Fed. R. Evid. 702, 703 or 705 must be formally disclosed under Fed. R. Civ. P. 26(a)(2). (Tr. June 15, 2004 at 6-7.)

3

representing all three plaintiffs, moved to withdraw as counsel for Monteil and for separate trials. [Dkt 32.] In response to that motion, METRA's counsel attached a copy of Dr. Tiballi's office note of his evaluation of Monteil on May 24, 2004. (Def.'s Resp. Mot. Separate Trials and Mot. Withdraw, Ex. 1, Office Note.) [Dkt 31.] In that note, Dr. Tiballi concluded that, in his opinion, Monteil's symptoms were not due to building exposure. (*Id.* at 3.) He also stated that he discussed his findings with Monteil and "she was disappointed." (*Id.* at 2.)

The request for separate trials was denied, but Bishof was given leave to withdraw as counsel for Monteil. (Order, Nov. 5, 2004.) [Dkt 35.] At METRA's request, a rule was entered requiring Monteil to show cause why her complaint should not be dismissed. (*Id.*)

Monteil retained new counsel who filed a response to the rule, including an affidavit by Monteil. (Pl. D. Marie Granat- Monteil's Resp. Court's Rule to Show Cause ("Pl.'s Resp."). [Dkt 40.] Bishof also filed an affidavit. [Dkt 43.] METRA filed its Reply and Motion For Sanctions, asking that Dr. Gray's testimony be barred, that Monteil's complaint be dismissed, and that METRA be reimbursed for its fees and costs relating to Dr. Gray's disclosure. (METRA's Reply at 13.)

Bishof and Monteil relate the following. According to Bishof, in the first week of April 2004, plaintiff Denton told Bishof that he had been examined by Dr. Tiballi the previous month, and that Dr. Tiballi attributed Denton's allergic reactions to workplace conditions. (Bishof Aff. ¶ 3-4.) Bishof attempted to contact Dr. Tiballi, and in May was able to reach him and obtain Dr. Tiballi's agreement to act as the plaintiffs' medical expert. (*Id.* ¶ 5-8.) On May 14, 2004, Bishof provided Dr. Tiballi the medical records of all three plaintiffs and other documents relating to the case. (*Id.* ¶ 9.) Subsequently, Bishof had a telephone conversation with Monteil and told her to schedule an appointment with Dr. Tiballi. (*Id.* ¶ 12-13.) According to Bishof, on June 4, 2004, Monteil called the Minneapolis office of

4

the law firm with which Bishof is associated and complained about her representation. (*Id.* ¶ 14.) Bishof states that "a day or two later" he called Monteil and she told him that her flight to Chicago had been cancelled. (*Id.* ¶ 15.) She also said that she could not waste any more time traveling to Chicago because she had a new job and could not miss anymore time. (*Id.*) Bishof states,"At no time during this conversation did Ms. Monteil tell me that she had seen Dr. Tiballi. In a subsequent call Ms. Monteil informed me that she had made an appointment with Dr. Gray." (*Id.*) On June 25, 2004, Bishof was informed by Dr. Tiballi's office that Monteil had been seen by Dr. Tiballi on May 24, 2004 for an evaluation. (*Id.* ¶ 17, 18.)

Monteil's affidavit states that she contacted Denton in mid-May 2004, who told her that he had been examined by Dr. Tiballi, and encouraged her to make an appointment with him. (Monteil Aff. ¶ 3.) Monteil states, "I was aware of the fact that the Court had imposed deadlines for identifying expert witnesses for our case, and that we were getting near the end of the time for complying with the Court's order." (*Id.* ¶ 4.) She called Bishof and complained that he had failed to keep her abreast of developments. (*Id.*) Monteil states that during that telephone call, Bishof asked her if she would be willing to make her own appointment with Dr. Tiballi, but because she was still upset about how she had learned of Dr. Tiballi, she told Bishof she "would have to think about it." (*Id.* ¶ 5.) She further states that she made her own appointment to see Dr. Tiballi, but did not tell Bishof about it. (*Id.* ¶ 6.) Because she thought Dr. Tiballi's conclusions were incorrect, she scheduled an appointment with Dr. Gray. (*Id.* ¶ 7.) After she made that appointment, she called Bishof. (*Id.*) She believes she made that call sometime during the first two weeks of June 2004. (*Id.*) She states that, in that call she told Bishof that she had seen Dr. Tiballi and that he was unable to connect her symptoms with sick-building syndrome. (*Id.* ¶ 8.) Monteil expressly denies that Bishof told her that a representation would be made

to the court that she had been unable to schedule an appointment with Dr. Tiballi because of travel related issues. (*Id.* ¶ 9.)

## DISCUSSION

After considering the parties' submissions, the court concludes that an evidentiary hearing is not necessary, notwithstanding certain factual disputes. The facts material to this decision are not disputed.

In this case, the plaintiffs allege that they became sick because of METRA's negligence in maintaining the offices in which the plaintiffs worked. There is simply no question that some expert testimony under Rules 702, 703 or 705 would be necessary to establish that the symptoms the plaintiffs suffered were caused by the conditions of the METRA workplace. Notably, the plaintiffs are not going to call any treating doctors to testify. Thus, in order to carry their burden at trial, the plaintiffs need a retained expert on medical issues.

This case was filed in 2002, based on circumstances arising in 2000. The plaintiffs were granted several extensions of time to make the disclosures required by Rule 26(a)(2). In March 2004, the plaintiffs were ordered to serve their Rule 26(a)(2) disclosures by May 4, 2004, "FINAL DEADLINE." (Order, March 9, 2004.) On April 28, 2004, one further extension was granted to June 4, 2004. (Order, April 28, 2004.) Monteil admits that in mid-May, she knew the deadline for expert disclosures was approaching, but she refused to commit to Bishof that she would see Dr. Tiballi. As of June 4, Denton and Kremian had an expert witness on medical issues, but Monteil did not.

The only reason why Monteil was granted an additional period to disclose her medical expert after June 4 was the representation, now admitted to be untrue, that she was unable to keep her appointment with Dr. Tiballi because her flight was cancelled and Dr. Tiballi was not able to schedule

6

another appointment. Whether Monteil or Bishof concocted that misrepresentation is irrelevant to this determination. Monteil would not have been granted an extension had the truth been told, *i.e.*, that Monteil's inability to serve an expert report was not the result of some event outside her control but rather because, as of June 4, and even as of June 14 (almost four years after the alleged exposure), there was no one who was willing to testify as an expert witness on medical issues for her. Monteil was still shopping for a medical expert after the much-extended deadline set for Rule 26(a)(2) disclosures not because of some mishap of airline scheduling but because the disclosed medical expert could not support her claim. The extension granted on the basis of the misrepresentation to the court is vacated.

Monteil did not have an expert disclosure on medical issues to serve by the deadline of June 4, 2004. The consequence of failing to serve an expert disclosure by the date established by the court is set out in Rule 37(c): "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . [shall] not, unless such failure is harmless, [be] permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c). Monteil has not demonstrated any justification for why, in the two years this case was pending before June 4, 2004, she had not obtained an expert witness on medical issues. Although Monteil's affidavit blames her attorney, Monteil admits that she knew in mid-May that the court-ordered deadline was fast approaching. She further admits that, in a fit of pique, she refused even at that late date to commit that she would make an appointment to be examined by the expert her attorney and another plaintiff had secured.

That Monteil's failure to comply with the court's disclosure schedule was not harmless to METRA is obvious. As discussed above, by June 4, the plaintiffs had been given numerous extensions of time to serve expert reports. METRA's counsel objected to the plaintiffs' request for more time after

June 4. Especially in light of the fact that no treating doctors were disclosed as testifying, METRA had a right to know what evidence the plaintiffs would present to link their symptoms to the building conditions.

In this respect, Plaintiffs' Motion for Leave to Serve a Supplement to the Expert Report [dkt 30] filed on September 27, 2004 is significant. That motion shows that Monteil was hoping to embark on extensive expert consultation, all after the June 4 deadline. That motion sought leave to supplement Dr. Gray's report served on July 23, 2004 with a three page statement of additional laboratory testing, all of which was apparently ordered and undertaken after June 4, 2004. (Pls.' Mot. Leave Serve Suppl. Expert Report ¶ 4-6, Ex. B, Suppl. Occupational Environmental Health Report.) In fact, it appears that Dr. Gray's examination of Monteil did not take place until July 14, 2004. (*Id.*, Ex. A., Occupational Environmental Health Report at 1.) In addition, that motion also sought leave to serve Plaintiffs' Second Supplemental Rule 26(a)(2) Expert Disclosures, naming not only Dr. Gray but also a Dr. Robert Crago who consulted with Dr. Gray. (*Id.*, Ex. A.)

In *Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir. 1998), the Seventh Circuit affirmed summary judgment in favor of a defendant and the exclusion of the plaintiff's expert witness because the expert's report (which was deficient as well as late) was served the next business day following the deadline set by the court. The Seventh Circuit observed that "the district court acted well within its discretion in setting the schedule it did and in requiring the adherence of the parties to that schedule." 150 F.3d at 741.

METRA argues that a sanction of dismissal with prejudice is appropriate. The court believes that the more appropriate sanction is that set out in Rule 37(c), precluding Monteil from calling Dr. Gray as a witness or using his expert report. The consequence of that may be, as it was in the *Salgado*

case, that Monteil cannot establish a prima facie case. That remains for determination another day.

METRA also asks for its attorneys' fees and costs relating to discovery and proceedings resulting from Dr. Gray's disclosure. That request is denied. It does not appear that METRA has yet deposed Dr. Gray, and the decision to exclude his report results in a significant advantage to METRA as well as saving expenses to take his deposition and possibly that of his consultant, Dr. Crago.

## CONCLUSION

For the forgoing reasons, the Defendant's Motion for Sanctions is granted in part as follows: The report of Dr. Gray is stricken, and Dr. Gray may not be called as a witness by plaintiff Monteil in any proceeding in this case. The order entered on June 15, 2004 is vacated insofar as it granted the plaintiffs leave to serve a Rule 26(a)(2) disclosure for Dr. Gray. Plaintiffs' Motion for Leave to Serve a Supplement to the Expert Report is denied. Defendant's Motion for Sanctions is denied insofar as it requests that Monteil's claims be dismissed or that attorneys' fees be awarded. This ruling is without prejudice to any other motion the defendant may bring.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

February 28, 2005