

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL DENTON, RANDI L. KREMIAN and DORIS MARIE GRANAT-MONTEIL<br>Plaintiffs,<br><br>v.<br><br>NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION<br>Defendant. | Cause No. 02 C 2220<br><br>Magistrate Judge<br>Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

On February 28, 2005, the court struck the expert report submitted by Dr. Michael Gray on behalf of plaintiff Doris Marie Granat-Monteil ("Monteil") and barred Dr. Gray from testifying as a witness in this case. (Order, February 28, 2005.) [Dkt 49, 50.] The circumstances surrounding that decision are detailed in the February 28, 2005 opinion. Defendant Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra") now moves for summary judgment on Monteil's claims, arguing that without medical expert testimony Monteil cannot prove causation, a necessary element of her claim. For the reasons stated herein, the motion is granted.

### FACTUAL BACKGROUND[1]

Plaintiffs Daniel Denton, Randi Kremian, and Doris Marie Granat-Monteil brought this

---

[1] The following facts are taken from the parties' respective statements of fact filed pursuant to Local Rule 56.1, which are cited herein as: "Def.'s LR Stmt. ¶ ___" [dkt 57], "Pl.'s LR Resp. ¶ ___" [dkt 62] and "Pl.'s LR Stmt." [dkt 62], and from the exhibits submitted with Defendant's statement, which are cited herein as "Def.'s LR Ex. ___" [dkt 55]. Statements not responded to or not controverted by specific references to the record are deemed admitted. L.R. 56.1(b)(3).

1

action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), alleging that in 2000 the 15th floor of the building where they worked became contaminated with molds, fungi and bacteria and they became ill as a result of being exposed to unsafe work conditions. (Compl. ¶¶ 8, 10, 11.) [Dkt 1.] In around February 2003, the parties consented to the jurisdiction of a Magistrate Judge and the case was reassigned to this court pursuant to 28 U.S.C. § 636(c). [Dkt 8, 9, 10.]

Monteil began her employment with Metra as a secretary in August 1991, and she subsequently applied for and accepted the position of Engineer Certification Administrator in Metra's Safety and Rules Department. (Def.'s LR Stmt. ¶¶ 7-8; Pl.'s LR Resp. ¶ 3; Def.'s LR Ex. C, Deposition of Doris Marie Granat-Monteil at 20, 22.) Sometime around June 2000, Metra moved some of its administrative offices, including the Safety and Rules Department, to 547 West Jackson, Chicago, Illinois. (Def.'s LR Stmt. ¶ 9; Pl.'s LR Resp. ¶ 4; Monteil Dep. at 23-24, 34.) The Safety and Rules Department was located on the 15th floor of 547 West Jackson. (Def.'s LR Stmt. ¶ 11; Pl.'s LR Resp. ¶ 5; Monteil Dep. at 23-24.) Monteil testified that within a few weeks of the move, she began feeling ill and experiencing symptoms. (Pl.'s LR Stmt. ¶ 11; Monteil Dep. at 34.) From August through October 2000, Monteil went on a medical leave of absence due to abdominal pain and depression. (Def.'s LR Stmt. ¶ 12; Pl.'s LR Resp. ¶ 5; Monteil Dep. at 53, 56, 58.) Around this time, she saw Dr. Rosenbaum for various symptoms including severe stomach pain, diarrhea, vomiting, dizziness and difficulty with bowel movements. (Def.'s LR Stmt. ¶ 13; Pl.'s LR Resp. ¶ 5; Monteil Dep. at 58-59.) Monteil continued to have stomach pains after she returned from her leave of absence. (Def.'s LR Stmt. ¶ 14; Pl.'s LR Resp. ¶ 5; Monteil Dep. at 63.)

By January 2001, several Metra employees were complaining of various symptoms. (Pl.'s

LR Stmt. ¶ 11; Def.'s LR Ex. E, Ronald Bachus Dep. at 22-23.) Monteil testified that some of those complaints were the same as symptoms she was experiencing. (Pl.'s LR Stmt. ¶ 11; Monteil Dep. at 46, 73, 108.) Ronald Bachus, an industrial hygiene engineer at Metra, was told that a couple of people were experiencing swelling or itchiness around their faces. (Bachus Dep. at 15, 23.) He talked to several other people in the Safety Department to see if anybody had been experiencing those symptoms and learned that employees were experiencing a variety of symptoms, including facial swelling, tingling of lips, headaches, allergic type symptoms and digestive symptoms. (Bachus Dep. at 24-33; Def.'s LR Stmt. ¶ 15; Pl.'s LR Resp. ¶ 6.) In February 2001, the Safety and Rules Department was temporarily relocated to the fifth floor of 547 West Jackson. (Def.'s LR Stmt. ¶ 15; Pl.'s LR Resp. ¶ 6; Bachus Dep. at 40-41.)[2]

In March 2001, Monteil took a second leave of absence due to her abdominal symptoms. (Def.'s LR Stmt. ¶ 16; Pl.'s LR Resp. ¶ 6; Monteil Dep. at 101; Def.'s LR Ex. F, Medical Report Supporting Leave of Absence; Def.'s LR Ex. G, Application for Short Term Disability Benefits.) Monteil was scheduled to return to work in May 2001, but extended her leave of absence through June 19, 2001. (Def.'s LR Stmt. ¶¶ 16-18; Pl.'s LR Resp. ¶ 6; Monteil Dep. at 112-14.) Monteil remained on the medical leave of absence until her resignation date of July 18, 2001. (Def.'s LR Stmt. ¶ 18; Pl.'s LR Resp. ¶ 6; Monteil Dep. at 113-114.)

Monteil's stomach pains continued from the time she left Metra in 2001 through and including her relocation to Arizona in August 2002. (Def.'s LR Stmt. ¶¶ 3, 19; Pl.'s LR Resp. ¶¶ 1, 7; Monteil Dep. at 119.) On May 24, 2004, Monteil saw Dr. Robert Tiballi, and his office notes

---

[2] Although Metra's LR Statement states that this relocation occurred in February 2000 (Def.'s LR Stmt. ¶ 15), that appears to be a typographical error. *See* Bachus Dep. at 40-41.

from that visit includes an impression of "episodic dyspepsia."³ (Def.'s LR Stmt. ¶ 20; Pl.'s LR Resp. ¶ 8; Def.'s LR Ex. H, Office Note from May 24, 2004.)

Plaintiffs filed this action against Metra on March 27, 2002. (Def.'s LR Stmt. ¶ 22; Pl.'s LR Resp. ¶ 9.) After several extensions, plaintiffs were ordered to serve Rule 26(a)(2) disclosures by June 4, 2004. (Order, April 28, 2004 [dkt 26]; Def.'s LR Stmt. ¶ 23; Pl.'s LR Resp. ¶ 9.) On June 4, 2004, plaintiffs identified Kim Anderson, a building expert, and Dr. Robert Tiballi, D.O. as their Rule 26(a)(2) expert witnesses. (Def.'s LR Stmt. ¶ 24; Pl.'s LR Resp. ¶ 9; Def.'s LR Ex. J, Pls' Rule 26 Expert Disclosures.) Monteil did not disclose any expert on medical issues by June 4, 2004, instead attempting to disclose Drs. Michael Gray and B. Robert Crago in a supplemental disclosure after the June 4 deadline. (Def.'s LR Stmt. ¶¶ 25, 26; Pl.'s LR Resp. ¶ 10.) On February 28, 2005, this court barred Drs. Gray and Crago from testifying in this matter. (Mem. Op. & Order, February 28, 2005 at 8-9.) [Dkt 50.] Thus, the only experts disclosed on behalf of all three plaintiffs were Dr. Tiballi and Kim Anderson. (Def.'s LR Stmt. ¶ 27; Pl.'s LR Resp. ¶ 10; Pls' Rule 26 Expert Disclosures.) However, Dr. Tiballi did not submit an expert report on behalf of Monteil. (Def.'s LR Stmt. ¶ 27; Pl.'s LR Resp. ¶ 10.) Notably, Monteil did not identify her treating physician, Dr. Rosenbaum, in her Rule 26(a)(2) disclosure.

Kim Anderson has an M.S. and a Ph.D. in Environmental Health. (Def.'s LR Stmt. ¶ 28; Pl.'s LR Resp. ¶ 10; Def.'s LR Ex. M, Curriculum Vitae of Kim Anderson.) According to his expert report, Anderson did not examine Monteil or her medical records. (Def.'s LR Ex. N, Anderson's

---

³ Dyspepsia is indigestion and impairment of the normal process of digestion. It may be due to general nervousness, irritability of the stomach, gallbladder disease, excessive acidity of the stomach, chronic inflammation of the appendix, etc. J. E. Schmidt, *Attorney's Dictionary of Medicine*, Vol. 2, D-243 (Matthew Bender, November 2004).

Report at 2.) Both parties agree that Anderson's expert report does not and cannot provide an opinion regarding medical causation of plaintiffs' symptoms because his opinion is provided "within a reasonable degree of scientific and toxicological certainty." (Def.'s LR Stmt. ¶ 29; Pl.'s LR Resp. ¶ 10; Anderson's Report at 13.) With respect to causation, Anderson stated:

> Based on the results of this evaluation of the materials reviewed, it is my opinion, within a reasonable degree of scientific and toxicological certainty, that conditions existed in the 15th Floor of the METRA office building . . . *that could cause* the symptoms and physical anomalies experienced by nearly all workers including Mr. Daniel Denton, Ms. Randi Kremian and Ms. Doris Marie Granat-Monteil, who were transferred to the 15th Floor.

(Anderson's Report at 13, emphasis added.)

## LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must support its contentions with admissible evidence and

may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id.* *See also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (non-moving party is required to present evidence of "evidentiary quality" (*i.e.*, admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating the existence of a genuine issue of material fact). "[N]either 'the mere existence of some alleged factual dispute between the parties,' ... nor the existence of 'some metaphysical doubt as to the material facts,' ... is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (quoting *Anderson*, 477 U.S. at 247 and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Under FELA, a railroad employee may recover for injuries "resulting in whole or in part from the negligence" of the railroad or its agents. 45 U.S.C. § 51.

> [T]he quantum of evidence necessary to establish liability under the FELA is lower than that required in an ordinary negligence action.... Nevertheless, because the FELA is not a strict liability statute, plaintiffs still must prove the traditional common law elements of negligence, including foreseeability, duty, breach, and causation.

*Fulk v. Illinois C. RR. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). "The test of a jury case under the FELA 'is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury ... for which damages are sought.'" *Id.* (quoting *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506 (1957)). However, it is well settled that

the plaintiff in a FELA case must still demonstrate some causal connection between the defendant's negligence and the plaintiff's injury. *Schmaltz v. Norfolk & W. Rwy. Co.*, 896 F. Supp. 180, 182 (N.D. Ill. 1995).

Metra argues that it is entitled to summary judgment on Monteil's claim because she has failed to establish a *prima facie* case under FELA because she has no medical expert testimony concerning causation. In opposition to Metra's motion for summary judgment, Monteil argues that it would be permissible for a jury to find causation from the temporal relationship between the relocation of Metra's Safety and Rules Department and the onset of her symptoms and complaints, and from Anderson's opinion that there were conditions on the 15th floor that could cause the plaintiffs' symptoms.

Monteil did not disclose any treating physician pursuant to Rule 26(a)(2), not even Dr. Rosenbaum, the physician who examined her at the time of her first medical leave. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004) (treating professional who will provide expert testimony under Fed. R. Evid. 702 must be disclosed pursuant to Rule 26(a)(2)). The court's striking of Dr. Gray's opinion left no testimony by any medical professional who had examined Monteil and reviewed her medical records and is capable of testifying regarding her medical condition. Thus, there will be no testimony, except presumably Monteil's, regarding her symptoms, records or treatment, or the medical causation of Monteil's condition.

Monteil argues that Anderson's report provides a sufficient basis for an inference of causation because he opined "within a reasonable degree of scientific and toxicological certainty" that the conditions at 547 West Jackson "could cause the symptoms and physical anomalies experienced by nearly all workers" including Monteil. (Anderson's Report at 13.) However, both

parties concede that Anderson cannot provide an opinion regarding the medical causation of plaintiffs' symptoms. (Def.'s LR Stmt. ¶ 29; Pl.'s LR Resp. ¶ 10.)

Monteil relies on *Cella v. U.S.*, 998 F.2d 418, 428-29 (7th Cir. 1993), to support her contention that a jury may infer causation from a temporal sequence. (Pl.'s Mem. at 2.) However, the evidence in *Cella* was significantly different from that produced by Monteil. In *Cella*, there was testimony from a medical professional regarding medical causation. 998 F.2d at 429. In finding the evidence regarding medical causation sufficient, the court in *Cella* noted that the medical expert testified that, "based on his examination and testing of [plaintiff], his review of [plaintiff's] full medical history, his research of medical literature, and his analysis of documented case studies of polymyositis, it is his opinion within a reasonable degree of medical certainty that trauma was the cause of this plaintiff's polymyositis." *Id.* (emphasis omitted). The expert's conclusions in that case were supported by "his physical examination of the plaintiff, extensive neurological testing of the plaintiff, and careful review of the plaintiff's medical history," which allowed the expert to exclude other possible factors as a cause of the plaintiff's condition. *Id.* at 421. Therefore, any inferences drawn in that case had a basis in medical testimony, not simply *post hoc, ergo propter hoc*. In this case, Monteil has not disclosed a medical expert, and thus there will be no testimony about Monteil's medical examinations, medical history, research based on medical literature and, most importantly, no opinion within a reasonable degree of medical certainty regarding causation.

Expert testimony is generally required to establish a causal connection between an accident and an injury "unless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile." *Schmaltz*, 896 F. Supp. at 182 (quoting *Moody v. Maine C. R.R. Co.*, 823 F.2d 693, 695-96 (1st Cir. 1987)). In *Schmaltz*, the court found that "[t]he existence

of a causal relationship between herbicide exposure and respiratory illness is not obvious to lay people." *Id.* That same reasoning applies here. The existence of a causal relationship between exposure to molds, fungi and bacteria and the medical conditions claimed by Monteil is not obvious to lay people. Rather, that type of knowledge is obtained through specialized training and would require expert testimony.

Except for the stricken report of Dr. Gray, Monteil has not offered any expert testimony to support a relationship between the conditions in the workplace in 2000 and Monteil's claim of stomach conditions that continued even after her extended leaves of absence and her relocation to Arizona in 2002. Without any such evidence, there is no basis to support a reasonable inference of causation. Thus, Monteil has failed to produce admissible evidence to support a necessary element for her claim, and Metra is entitled to summary judgment.

## CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted. Judgment is entered in favor of defendant Northeast Illinois Regional Commuter Railroad Corporation and against plaintiff Doris Marie Granat-Monteil.

IT IS SO ORDERED.

*[signature]*
Geraldine Soat Brown
United States Magistrate Judge

June 16, 2005

9